UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFF BISHOP,
HEIDI BISHOP,

       Plaintiffs,

v.                                                Case No. 8:09-cv-00676-T-24-AEP

I.C. SYSTEM, INC.,

       Defendant.
_____/

# ORDER GRANTING
# PARTIAL SUMMARY JUDGMENT

The Court now considers the Motion for Partial Summary Judgment filed by Plaintiffs Jeff Bishop and Heidi Bishop. (Doc. 28.) The Bishops seek summary judgment on one of five claims in Count I of the Amended Complaint against Defendant I.C. System, Inc. for a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(c). I.C. System opposes the motion. (Doc. 32.)

With exceptions, § 1692c(c) prohibits a debt collector from contacting a consumer after being notified in writing that the consumer wishes the debt collector to stop communicating with him. Plaintiff Jeff Bishop argues that I.C. System violated § 1692c(c) because it contacted him after he wrote I.C. System a letter that said: "Any further correspondence from your organization or any other collection agency will be discarded or returned to you unopened." I.C. System contends that a genuine jury issue remains whether Bishop's letter triggered § 1692c(c)'s protection. Because the Court finds that any jury would conclude that the letter demanded that I.C. System stop contacting the Bishops, the Court enters partial summary judgment for the

Bishops on this single claim.

## BACKGROUND[1]

In September 2008, Jeff Bishop and his wife Heidi received a telephone call and a letter from I.C. System, a debt collection agency, at their North Carolina home about a debt they allegedly owed to a dentist, Richard Salvatore, in upstate New York. (Doc. 28-1; Doc. 34 at 13-16.) Jeff Bishop said he told the representative from I.C. System that the company had made a mistake. Id. The Bishops had never been to a dentist in upstate New York. They did not know a dentist named Richard Salvatore. And it was impossible for a dentist to work on their son's teeth because at the time of the alleged work, their son was an infant, who had no teeth. Id.

About a month later, I.C. System contacted the Bishops again. (Doc. 28-1; Doc. 34 at 16-24.) This time, I.C. System called the Bishops at home and sent them a letter about a $84 medical bill that the Bishops allegedly owed to doctors at Associates In Pediatrics in Virginia, where the Bishops had previously lived. Id. Jeff Bishop said he told the I.C. System representative that the staff at Associates In Pediatrics had improperly billed their health insurance carrier for flu vaccines for the Bishops' two sons. Once the doctor's office corrected their error, the Bishops' insurance carrier would pay the bill. Id.

Despite this explanation, I.C. System sent Heidi Bishop a collection letter on October 20, 2008 and again on November 24, 2008. (Docs. 28-2, 28-3). Jeff Bishop said he also received more phone calls from I.C. System representatives. During one of those calls, Jeff Bishop said he asked the I.C. System representative to stop calling him. (Doc. 34 at 23.) According to

---

[1] The Court includes this background only to provide context for its Order. By laying out this summary, the Court makes no findings of fact. Summary judgment requires that the Court view all facts and draw all reasonable inferences in the light most favorable to the non-moving party, in this case I.C. System.

2

Bishop, the representative told him that I.C. System would continue to call until he placed his request to cease communication in writing. Id. On November 28, 2008, Bishop wrote a manager at I.C. System's headquarters in St. Paul, Minneapolis this letter:

> I am returning your September 30, 2008, October 20, 2008 and November 24, 2008 letters for you to recycle. As we have repeatedly pointed out to Associates in Pediatrics, Heidi long ago paid them every penny that she legitimately owes, which is nothing. Copayments were paid at the time services were rendered, and all other charges were covered by not one but *two* health insurance companies, which Associates's staff has still failed to appropriately bill despite having the issue repeatedly explained to them over the phone. Their continuing failure to perform such a basic function of their job as to properly bill insurance companies reflects a level of incompetence matched only by your own in attempting to collect another nonexistent debt on behalf of a certain Richard Salvatore, a dentist none of us have ever seen, in a state where none of us have ever resided, for dental services rendered to a then-infant who didn't even have teeth at the time.
>
> In the highly unlikely event that Associates believes they have a non-frivolous claim for $84 or any other amount, it is up to them to contact us **directly** and explain why. Any further correspondence from your organization or any other collection agency will be discarded or returned to you unopened.

(Doc. 28-4) (emphasis in original).

On January 2, 2009, Heidi Bishop received another letter from I.C. System about the same $84 bill. (Doc. 28-6.) According to Jeff Bishop, representatives from I.C. System continued to call the Bishops at home. (Doc. 28-1.) The calls came on January 26, February 4, February 5, February 9, and other unspecified dates in 2009.[2] Id. On January 9, 2009, Jeff Bishop said he called I.C. System to find out whether they had received his November 28 letter. They had, Bishop said. But Bishop said the I.C. System representative told him that the company would continue to call him until the Bishops provided proof that they did not owe the

---

[2] In a deposition, Jeff Bishop estimated that he spoke to an I.C. System representative on the phone about a dozen times. But he could not state the number of times with certainty, except to state that there were more than five phone conversations. "If I were to pick a wild number, I'd probably say about a dozen," Bishop testified. (Doc. 34 at 25.)

3

$84 debt.  Id.

On March 25, 2009, the Bishops sued I.C. System in the 13th Judicial Circuit of Florida. The Complaint was removed to federal court and then amended.  (Docs. 1, 17.)  The Amended Complaint alleges that I.C. System violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, (Count One), the Florida Consumer Collection Practices Act ('FCCPA"), Fla. Stat. § 559.72, (Count Two), and committed the common law tort of invasion of privacy by intruding upon the Bishops' seclusion (Count Three).  Within Count One, the Bishops make four claims that I.C. System violated four separate provisions of the FDCPA: § 1692c(c), § 16923(10), § 1692e(2)(a), and § 1692d(6).

In the § 1692c(c) claim, the Bishops allege that I.C. System continued to communicate with the Bishops after Jeff Bishop notified the debt collector in writing that the Bishops refused to pay the debt or wished I.C. System to cease further communication with them.  The Bishops seek the maximum statutory damages of $1,000, actual compensatory damages, damages for emotional and mental anguish, and attorney's fees and costs.

The Bishops now move for partial summary judgment on the § 1692c(c) claim in Count One.  I.C. System opposes the motion, and, in its response, urges the Court to enter partial summary judgment in its favor on this claim.  I.C. System, however, did not move for summary judgment, and therefore, as the Court instructed I.C. System recently in another FDCPA case,[3] the Court cannot grant summary judgment to I.C. System on any claim when it does not file a

---

[3] See Casey v. I.C. System, Inc., No. 8:09-cv-210-T-24-TBM, 2010 WL 415310, at *1 n.2 (M.D. Fla. Jan. 29, 2010).  In an endorsed order in this case, the Court also instructed I.C. System that if it wished to file a cross motion for summary judgment, it should seek leave under Rule 6(b) of the Federal Rules of Civil Procedure to do so. (Doc. 33.)  The Court also notes, as it did in Casey, that because I.C. System did not move for summary judgment on the invasion of privacy claim, that claim remains before the Court.  Casey, 2010 WL 415310, at *1 n.1.

4

separate motion for summary judgment.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.[4] Therefore, the moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When the moving party has discharged its burden, the non-movant must then go beyond the pleadings, and by her own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue of material fact for trial. Id.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[6] In addition, a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[7] "If the evidence is merely

---

[4] Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[6] Id. at 251-52.

[7] Id. at 248.

5

colorable, or is not significantly probative, summary judgment may be granted."[8]  However, "[t]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."[9]

## ANALYSIS

### A. No Genuine Issue of Material Fact Remains on the § 1692c(c) Claim

Section 1692c(c) of the Federal Debt Collection Practices Act says: "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt. . . ." The statute then provides three exceptions, none of which are relevant here.

#### 1. *Undisputed Material Facts*

The following facts are undisputed:

The parties do not dispute that both Plaintiffs are "consumers," as defined by 15 U.S.C. § 1692a(3).[10]  While it may be unclear whether only Heidi Bishop—as opposed to her husband, Jeff—was the "consumer" allegedly obligated to pay the $84 debt, any dispute about this issue is not material. Section 15 U.S.C. §1692c(d) defines "consumer" broadly to include the consumer's spouse. While the Bishops later filed for divorce, it is undisputed that they were married at the time of I.C. System's alleged violations. (Doc. 34 at 6-7.)

---

[8] Id. at 249-50.

[9] Id. at 252.

[10] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

6

Second, the parties do not dispute that the Bishops allegedly owed a "debt," as defined by 15 U.S.C. § 1692a(5).[11] I.C. System contacted the Bishops to get them to pay a doctor's bill for services rendered by Associates In Pediatrics. Payment to a doctor's office for a flu vaccine for children is an obligation arising out of a transaction for services for personal, family, or household purposes, and therefore, is a "debt" under § 1692a(5).

Third, the parties do not dispute that I.C. System is a "debt collector," as defined by 15 U.S.C. § 1692a(6).[12] Although I.C. System denied in its Answer to the Amended Complaint that it was a "debt collector,"[13] it does not dispute this material fact in its response to the partial summary judgment motion. Therefore, I.C. System has waived this defense.

Fourth, the parties do not dispute that Jeff Bishop sent I.C. System the November 28, 2008 letter, in which he wrote, "Any further correspondence from your organization or any other collection agency will be discarded or returned to you unopened." The parties also do not dispute that I.C. System received this letter. Under § 1692c(c), notification to the debt collector is "complete upon receipt."[14] Aside from the fact that I.C. System does not dispute that it received the letter, the Bishops also offer evidence from I.C. System's internal records that show

---

[11] "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. 1692a(5).

[12] "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (exclusions omitted).

[13] Doc. 20.

[14] In addition, "there is a presumption that 'every letter, properly addressed and stamped, is duly transported and delivered to the addressee.'" McGrady v. Nissan Motor Acceptance Corp., 40 F. Supp. 2d 1323, 1337 (M.D. Ala. 1998) (internal citations omitted).

that the company received the letter. (Doc. 28-5.)

Fifth, the parties do not dispute the fact that I.C. System contacted the Bishops by mail and by phone on more than one occasion about the $84 debt after it received Jeff Bishop's November 28 letter. While the parties may dispute the exact number of telephone calls made, this dispute is not material to the Bishops' § 1692c(c) claim as long as more than one contact occurred. Even after a debt collector receives a consumer's cease-and-desist letter, the FDCPA allows the debt collector to contact the consumer one more time for specific purposes.[15] Because the parties do not dispute that I.C. System contacted the Bishops at least twice, any dispute about the exact number of calls is not material to the § 1692c(c) claim. I.C. System also does claim that its communications fall within the statute's exceptions.

Sixth, the parties do not dispute that I.C. System's calls and its letter to the Bishops after November 28 concerned the $84 debt described in Bishop's letter. Even after a debt collector receives a consumer's cease-and-desist letter, the FDCPA allows the debt collector to contact the consumer about *other* debts or *future* debts.[16] In addition, a debt collector may contact a consumer if the contacts do not constitute "communications" about a debt as defined by § 1692a(2).[17] I.C. System does not dispute that its calls constituted "communications." Nor does it contend that its calls were about some other matter besides the $84 debt.

I.C. System also failed to raise other defenses that would create a genuine issue of

---

[15] See § 1692c(c)(1)-(3).

[16] Udell v. Kansas Counselers, Inc., 313 F. Supp. 2d 1135, 1140-41 (D. Kan. 2004.)

[17] "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). See also Ramirez v. Apex Fin. Mgmt., LLC, 567 F. Supp. 2d 1035, 1040-42 (N.D. Ill. 2008).

material fact for a jury to resolve. For instance, while I.C. System raised the bona fide error defense in its Answer, it did not assert this defense in its response to the partial summary judgment motion. I.C. System also makes no argument that Jeff Bishop waived the protections of § 1692c(c) by calling I.C. System on January 9 after he had sent his November 28 letter.[18]

### 2. *Sufficiency of Bishop's November 28 Letter*

Instead, I.C. System's argument focuses on one issue. It argues that Bishop's November 28 letter did not satisfy the statute's requirement that the consumer notify the debt collector that he wishes "the debt collector to cease further communication." I.C. System argues that because Bishop did not ask I.C. System to stop contacting his family, I.C. System was free to keep communicating with them.

I.C. System's argument rests on the fact that Bishop's letter did not include the actual words of the statute and did not literally say, "Cease further communication." But while Bishop did not use those precise words, his words expressed the same message—just with more bite. In the last paragraph, Bishop wrote that Associates In Pediatrics could contact them directly about a non-frivolous claim. By informing I.C. System that only Associates In Pediatric could contact them, Bishop was also telling I.C. System <u>not</u> to communicate with them. The letter also ends with Bishop writing that future correspondence from I.C. System would be discarded or returned unopened. This sentence would indicate to any reader that Bishop did not want to receive any more mail from I.C. System.

---

[18] While the Eleventh Circuit has not spoken on whether a consumer can waive his rights under § 1692c(c), the Ninth Circuit has found that a consumer who asks the debt collector in writing to cease communication, but then later contacts the debt collector anyway, can waive under certain circumstances the protection of § 1692c(c). <u>Clark v. Capital Credit & Collection Servs., Inc.</u>, 460 F.3d 1162, 1170-71 (9th Cir. 2006) (applying the "least sophisticated debtor standard" to evaluate whether debtor would have understood she was waiving her rights).

The fact that the letter does not literally ask I.C. System to cease communication does not deprive the letter of its plain meaning. As Judge Learned Hand famously said, "There is no surer way to misread any document than to read it literally."[19] The context of Bishop's letter makes it clear that he and his wife did not want to be disturbed by I.C. System any more. In addition, the sarcastic and insulting tone of the letter makes Bishop's request more clear—not less clear, as I.C. System contends.

Generally, when parties disagree about the inferences to be drawn from a material document, a jury should decide what inferences to make. But to send a matter to a jury, the disagreement must be reasonable.[20] A dispute is not "genuine" if it rests merely on a "metaphysical doubt" about the meaning of a word.[21] In this case, no reasonable disagreement exists about the inferences to be drawn from Bishop's letter. While lawyers may parse the meaning of any word into bits, no reasonable jury would stumble over what Bishop communicated in his letter. Context and common sense make the message clear. Bishop wanted I.C. System to leave him and his wife alone.

I.C. System does not address whether or not Bishop's letter notified it that the Bishops refused to pay the $84 bill. This is an important oversight. Section 1692c(c) can be triggered if the consumer notifies the debt collector either that they refuse to pay the debt *or* that they wish the debt collector to cease communication about the debt. In his November 28 letter, Bishop clearly refused to pay the $84 bill. He wrote that his wife "long ago paid [Associates In

---

[19] Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944) (Hand, J., concurring).

[20] Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1176 (11th Cir. 1985).

[21] Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Pediatrics] every penny that she legitimately owes, which is nothing." (Doc. 28-4.) Later in the letter, Bishop left open the possibility that he might reconsider his refusal to pay the debt if Associates In Pediatrics contacted him directly with a non-frivolous claim. But possible reconsideration does not make his refusal any less clear.[22]

The parties also argue over whether the Court should apply the "least sophisticated consumer" standard to this dispute.[23] We do not need to reach this issue, however, because we find that under any standard, a consumer who wrote a letter like Bishop's would have effectively communicated their wish that the debt collector stop contacting them, triggering § 1692c(c).

Neither party argues that the statute imposes a heightened standard on the consumer who seeks to stop a debt collector's calls and letters. The statute does not require that the consumer use any specific language or "magic words" to tell a debt collector to cease communication. A rigid requirement would not make sense given the statute's remedial nature and its purpose to protect the public.[24]

## B. The Court will Defer Ruling on Damages

The Bishops seek statutory damages, actual compensatory damages, damages for

---

[22] The FDCPA does not define "refuse," but its ordinary meaning does not encompass an unalterable rejection. Refuse means "to decline to do, accept, give, or allow." Webster's II New Riverside University Dictionary 989 (1988).

[23] Although the Ninth Circuit in Clark v. Capital Credit and Collection Services, Inc., 460 F.3d 1162, 1170-71 (9th Cir. 2006), applied the "least sophisticated consumer" standard to a consumer's conduct under § 1692c(c), the Eleventh Circuit has not done so. The Eleventh Circuit has applied the standard in §1692(e)(10), § 1692(d), and § 1692(f) cases. See Jeter, 760 F.2d at 1176; LeBlanc v. Unifund CCR Partners, ZB, __ F.3d __, 2010 WL 1200691 (11th Cir. 2010) (decided March 30, 2010). Given the gap in the case law, it is not clear that the "least sophisticated consumer" should apply in this context. Normally, courts apply this standard to determine whether the "least sophisticated consumer" would be deceived by a debt collector's actions. Here, we are evaluating the consumer's—not the debt collector's—actions.

[24] LeBlanc, 2010 WL 1200691, at *6 (11th Cir. 2010) (discussing Congress' purpose to protect consumers in enacting the FDCPA).

emotional and mental anguish, and attorney's fees and costs.

Section § 1692k allows a court to award a maximum of $1,000 in statutory damages per lawsuit, regardless of how many times a defendant violates the FDCPA.[25] When setting the amount of statutory damages, § 1692k(b) requires a district court to consider (1) the frequency and persistence of the debt collector's non-compliance with the law, (2) the nature of the non-compliance, and (3) the extent to which the collector intentionally did not comply with the law.[26] Because the Court cannot consider these factors on this record, it will defer ruling on damages, including the amount of statutory damages.

The Court will either submit this issue to the jury if this case proceeds to trial in July,[27] or it will conduct a hearing on damages if the parties dispose of the remaining claims without settling this issue.

For similar reasons, the Court will defer ruling on the Bishops' request for other damages and for attorney's fees and costs.

## **CONCLUSION**

Therefore, Plaintiffs' Motion for Partial Summary Judgment (Doc. 28) is **GRANTED**.

Because other claims remain, the parties must submit a joint pretrial statement to the Court by May 27, 2010. The Pretrial Conference is set at 8:30 a.m on June 2, 2010 in Courtroom 14A of the Sam M. Gibbons U.S. Courthouse in Tampa, Florida.

---

[25] 15 U.S.C. § 1692k(a). See also Harper v. Better Business Services, Inc., 961 F.2d 1561, 1563 (11th Cir. 1992) ("The FDCPA does not on its face authorize additional statutory damages of $1,000 per violation of the statute, of $1,000 per improper communication, or of $1,000 per alleged debt. If Congress had intended such limitations, it could have used that terminology. . . . Congress instead chose to write that additional damages would be limited to $1,000 per ['action.']").

[26] 15 U.S.C. § 1692k(b).

[27] See Sibley v. Fulton Dekalb Collection Serv., 677 F.2d 830, 832-33 (11th Cir. 1982).

**IT IS SO ORDERED.**

Done in Tampa, Florida, on May 12, 2010.

SUSAN C. BUCKLEW
United States District Judge